Michele Nesbitt, Appellant, David & Bonnie Faulk, Inc. This case is about windows, which may seem inconsequential or even silly at this point In this particular case, our clients were building an 18,000-square-foot home overlooking the water in Alaska, and the windows were the primary focal point of this home. So, it was very important to the aesthetics of this home and the beauty of the home. But I want to jump straight to subject matter jurisdiction and address Royal Canin, which the court brought to the party's attention. That case is applicable to the subject matter jurisdiction in this case. The language in Royal Canin is clear that it applies across the board. There are multiple instances within the opinion that Justice Kagan references other jurisdictional statutes outside of 1331, which was the specific statute at issue in that case. However, she terms it as original jurisdiction. And again, both federal question jurisdiction and diversity jurisdiction are types of original jurisdiction. She also references the diversity jurisdiction 28 U.S.C. 1332, which is the diversity jurisdiction statute, which also includes the CAFA class action type of diversity jurisdiction in this case. So, what is the proper bottom line from our court? Our position is that this should be remanded to the district court with specific instructions to follow.  To remand it to the state court. For lack of better words. Well, would it be dismissal or would it be to say, I guess that specifically is more my question. Would the district court simply dismiss the action as lacking jurisdiction or would it have the authority to remand it to state court? So, our clients filed two motions to remand and both of those were denied by the district court because the district court found that CAFA jurisdiction applied because they did not consider the amended complaint, which is improper according to Royal Canin. And so, at that point is when as soon as that second amended complaint was filed, the court lost jurisdiction. Does it matter practically? Because if, I mean, you may be right about this, but even if it was dismissed, wouldn't that toll the statute of limitations, this pending case, so you could just go refile in state court anyway? I don't know that that's clearly true. And the reason I say that is because in one of the footnotes in Royal Canin, Justice Kagan was discussing the fact about foreign manipulation that a plaintiff could dismiss their case in federal court and refile in state court as long as they were within the statute of  So, it would depend on state law then as to whether there was a tolling?  And so, our ask is that the court give specific direction to the district court because the district court has already considered the issue to apply Royal Canin and grant our client's motion to remand to the state court, which is where it belongs given that all of the issues in this case are entirely dependent on So, now you agree this case for us is not about windows. This case is about what we do with our technical jurisdiction. Yes. So, the merits are in your view, which I think is the one that, I mean, we'll hear, maybe they will disagree, but we're done on the merits is what you're saying?  Okay. But given that, I do also still want to address the merits in case the court disagrees with us on Can you not save that in case your other counsel don't raise the merits? Well, I can save that. Does the Let me talk about the windows. These were important. I get it. I've been to Alaska. I've seen some homes with cool. I get that windows are important here. Yes. And there were 150 windows. And one of the main points I wanted to make on that is that our clients have alleged that they were given a lifetime warranty and that was the entire reason they bought these particular windows. They had many discussions with Spenard Builders who they had a longstanding relationship and they were assured many, many times by Spenard Builder that these windows came with a lifetime warranty. That is alleged in the complaint and the court must accept that as true. So moving forward in all of the analysis, it has to be founded on the fact that there was a lifetime warranty provided at the time of sale. And then the question goes on to at what point was that breached? And our argument in our briefing was that it was a repair and replace remedy. And under Alaska case law and the statute, a repair and replace remedy is the only remedy until that fails its essential purpose. And only then can the buyer sue on the contract. And our position is that that repair or replace warranty was working for many years. Geldwin was replacing and or repairing the windows up until July 31st, 2020 when they repudiated the contract. And that is the point when our clients had a right to sue under the contract for failure to, I'm sorry, failure to respect the lifetime repair and replace remedy that was provided at the time of sale. I also wanted to point out that the limited warranty that was received by our clients two years post-purchase is not applicable. And our position is that it does not give our clients notice regarding anything to do with their warranty because the UCC law is that terms received after the purchase are not enforceable against the buyer. And our clients should be able to rely on that law in retaining their rights and knowing that that is not applicable to them and to move forward in their actions with Spenard and Geldwin knowing that that's not applicable to them, which is exactly what they did in this case. In addition, the conduct of both parties, all parties involved, was consistent with a lifetime warranty. They continued to repair and replace the windows and continued to make specific promises to our clients every time our client dealt with them and engaged with them about the issues with the windows. They were promised, we will continue to replace these windows as they fail. So any time our clients raised those concerns, their mind was set at ease because they were promised we'll continue to replace these. And that's both an enforceable promise if we're looking outside the actual contract than promissory estoppel is created by those separate promises made by employees of Geldwin. And those same facts act as equitable estoppel to Geldwin's now claim of the statute of limitations. And our client was never allowed to amend their complaint to include a more specific allegation regarding promissory estoppel or equitable estoppel. The facts regarding that are included in the complaint, but in this case, once they filed the motion to remand, the court's first order on that limited the scope of their ability to amend the complaint to only the facts related to CAFA jurisdiction. And so the court told them before they filed any amended complaint, I will strike your complaint if it is outside any CAFA facts. So they were constrained by that. They filed a first amended complaint, and that complaint was stricken because it did not follow the court's order, which is now in error that they could only amend to address the CAFA litigation. And so then they filed their second amended complaint, which only addressed the CAFA litigation. And then it was dismissed on the defendant's motion to dismiss without leave to amend. So they have not had multiple chances to amend their complaint. They've never had a chance to amend their complaint to make a specific or more clear promissory estoppel. If this gets remanded to state court, presumably you would have the opportunity to... Absolutely.  I mean, I don't know, but... We would file a motion to amend the complaint at that time, and that would be up to the state court to whether we were allowed to do that, but that is what we are asking the court to do. I'll reserve the rest of my time for rebuttal. Thank you. Thank you. And before we begin, so you have 12 minutes, is that right?  Okay. So I'm going to hold you to 12, so Mr. Nolan will get a chance to hear from you. If he goes over... He's not going to go over time, is what I'm saying. Okay. Fair enough. All right. Good morning. Richard Sieving appearing on behalf of the appellees Geldwin and Mr. Wendt. May it please the court. I'm going to quote Judge McFadden back in the district court for District of Columbia, who looked at this exact issue, CAFA jurisdiction. The plaintiffs then removed the CAFA allegations. Look at Royal Canning comes down, and they say, well, there's no more jurisdiction. You have to send it back, and his quote was, not so fast. That's what we have here. It's undisputed that when the plaintiffs filed this complaint in Alaska State Court, that we pulled it up to federal court. Federal court had clearly had jurisdiction under CAFA. The issue before you is whether or not Royal Canning now divests this court and the district court from subject matter jurisdiction under CAFA. It doesn't. And here's why. And here's what Judge McFadden ruled in... What's the case? Yeah. Okay. There's a case called Nichols v. 300 M Street Development. Now again, this is a district court case back in District of Columbia. It's 25 U.S. District, Lexus 93062. There's another case out of, well, let me just talk about Nichols for a moment. What happened in that case was exactly what happened in this case. And the rationale was... Is this published or unpublished? It's a district court case. Well, some of them are published. It's published, I believe. It is. Well, if it's... Here's what I... If you could. And again, I want to get to your point, but as soon as argument is over, if you could file a 28-J letter with these cases, because this would be very helpful for us. There's about four of them. Perfect. Put them all in the letter. Go for it. I will do that. Absolutely. So here's the issue. Royal Canning was a federal question case. Royal Canning was a situation where they alleged a violation of federal statute gets removed up, then they dismiss it, the federal case, and the issue was whether or not the federal question jurisdiction existed afterwards. This is a CAFA case, and the law in the Ninth Circuit was clear that you are bound by what you originally file in the state court. You can't go fiddling with it later and take out and say it's only, you know, 99 instead of the 100 under CAFA, members of the class. You can't go say it's 4.9 million instead of the 5 million. You can't do any of that to mess with CAFA. You are set. That was the law. Well, that's true, but that's not what happened here. No. Anyway, keep going. No, it's not what happened here, but... What do you make of the blanket statement in Royal Canning when a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says? So why doesn't it always depend on what the current operative complaint says? Because footnote 8 in Royal Canning says our opinion here does not affect the St. Paul Mercury case, a prior Supreme Court case. And St. Paul Mercury says if you only reduce the amount of the claim, reduce the monetary recovery that you're seeking, that doesn't come into play for the purposes of jurisdictional issues. In other words, in diversity, if you go below the 75,000, you can't use that later and say, well, now it's less than 75,000. That's St. Paul Mercury. So what you need to decide, what this court needs to decide is, is this case... But wait. I'm reading footnote 8. That's an amendment reducing the alleged amount in controversy to below the statutory threshold. That's exactly right. And that's exactly what happened here because none of the substantive claims were amended after the first amended complaint. The only thing the second amended complaint did was remove the class action allegations. Well, that's a big deal. It is a very big deal. It's a big deal for the plaintiff. If the plaintiff is paying a price by deleting class claims that presumably can't come back in in state court, so they're eliminating a claim, not just an amount in controversy. These cases that I'll put in the letter to the court deal with that exact issue. It was an issue where they dropped the class action allegations. I just want... I mean, you said footnote 8 controls, and I think you're wrong because here, the complaint that... I mean, maybe there's other cases, but I just want to deal with footnote 8. As I understand it, as I'm reading this, they dropped the class action complaint, but there's no question that there's diversity, and there's no question that the amount in controversy for... Or excuse me. There's no question that there's not diversity, and there's also... I guess the amount in controversy doesn't matter now. I mean, there's an Alaska plaintiff and an Alaska defendant. End of story. There's no federal jurisdiction at this point. Well, there is under CAFA because... But CAFA's gone from the complaint. That's the point. But that's not... The law in the Ninth Circuit is that they're bound by the original complaint even... That was all pre-Royal Canaan. It was, but Royal Canaan is distinguishable because it didn't apply in the cases that... It's not distinguishable because of footnote 8. Okay. It... Look, none of the substantive claims in the amended complaint that removed the class action allegations were changed. The substantive claims... Exactly. In footnote 8, they did. They removed the... They reduced the amount in controversy. Right, because... Because it's facts on the ground. That's what they're worried about. And this isn't about facts on the ground. It's about the pleadings and whether there's diversity jurisdiction under ordinary principles. Under CAFA jurisdiction. And I understand... CAFA claims are gone. And the plaintiff... I mean, what this case seems to say to me is that it's sort of the embodiment of what we all learned in law school, that the plaintiff is master of her... And if you choose not to bring a CAFA claim, if that CAFA claim had never been there, you wouldn't be in federal court, right? If there was not CAFA jurisdiction, we would not have been in federal court, correct? And our position is that the Beachwater Hut case and all those cases that talk about forum manipulation and not... That you can't later amend your complaint to remove CAFA... That was a good argument before Royal Canin. There's a disconnect there because Royal Canin looked at that specific issue and said, yes, we understand that there's a potential problem with forum manipulation here. And they still held that you got to look to jurisdiction after CAFA's removed. Well, Royal Canin wasn't a CAFA case. It was a federal question.  After the... Yeah. And that's... You're exactly right, Judge Graber. The plaintiff is the master of their complaint. And in Royal Canin, they voluntarily removed the only hook they had to get into federal court. That's happened here. They removed the... You said earlier, you agreed that without the CAFA claim, there's no federal jurisdiction. They voluntarily removed that. And it's not because there are facts on the ground showing the wrong amount in controversy. It's because the entire claim is gone. But class action in and of itself is functionally only to increase the amount that you're seeking in the lawsuit. You're filing it on behalf of a group of people. It's not a separate... Well, look, I think I'd like to hear what McFadden said. I think you went down a wrong, in fairness, I just think you went down a wrong rabbit hole. Maybe you have something here. You say you have four other cases. I'd like to hear what... Maybe you can explain a little bit better what Judge McFadden... What he said was, he distinguished Royal Canin and St. Paul Mercury and said, if you're going to voluntarily... It's a federal question under Royal Canin. But in his case, same as this case, you had a plaintiff filed a class action, gets removed, then they drop the class action allegations. He says what that is functionally is simply a reduction in the amount that the lawsuit is seeking. It is not dropping claims. It is only reducing how much the defendants could potentially be on the hook for. And that falls on the St. Paul Mercury side of the fence, not on the Royal Canin side of the fence. He's saying that the... He said that the diversity part doesn't matter? The party diversity doesn't matter? It does because it all has to relate back to the original filing. Well, I guess the question... Maybe I have the same question as Judge Nelson, I think, which is, did that case involve a situation in which there was imperfect diversity without the CAFA claim? Because it's one thing if there's still complete diversity and you drop the CAFA claim for some reason, so what? But here we no longer have a complete diversity and there's a CAFA claim. I believe the Nichols case, there was complete diversity, I believe. Why doesn't that matter to the outcome? Because that's not how the court ruled on whether or not the dropping of the CAFA was in fact... Well, you're asking me to challenge this without reading the case, but I'm suspecting that if I go read the case, what he's going to say is, the only thing that mattered there was amount in controversy because there was complete diversity and here there's not complete diversity. Am I wrong about that? Was there complete diversity in the Judge McFadden case? I believe there was, but that wasn't his analysis. Okay. Well, we'll go read it. Well, I'll get you the case. I think I'm out of time now. No, no. You still have a minute. Okay. I want to... We think it's distinguishable, Royal Canin. We think this court has jurisdiction. I just want to touch on the merits for a moment and that is, counsel's argument ignores the fact that the district court in granting the 12B6 motion specifically looked at the allegations, specifically paragraph 35 of the Second Amendment complaint where the plaintiffs admitted receiving the limited warranty. We had asked the court to take judicial notice of the limited warranty. The court declined to do that, but instead looked at it under the incorporation by reference doctrine because it was in fact referenced in the complaint. And what it says in paragraph 35 is that the plaintiffs received a copy of the POSI, the Geldwin limited warranty, in December of 2002. They claimed throughout their complaint that they believed that they received a lifetime oral warranty that covered installation and all new windows from Spenard. When they received that warranty in December of 2002, the district court correctly determined that that triggered the statute of limitations for all of these. They didn't file this lawsuit until 2022. The court said 2002, December of 2002, was a triggering event. They knew or should have known. They had a claim related to the windows at that time. And then two years later when Spenard tells them, no, we're not going to do anything else for you under the terms of the warranty, that they claimed Spenard gave them a lifetime warranty, an oral lifetime warranty. Spenard says no in 2004. Certainly that triggered the statute of limitations for all these claims. And the court did not interpret the terms of the warranty as counsel says in their reply. The court simply said you admitted getting the warranty. That started the statute running and you were precluded from all these claims are time barred. Thank you, counsel. Thank you. Oh, well, no, wait, he gets to go. Oh, I'm so sorry. If it pleases the court, my name's James Nolan on behalf of Spenard Builder Supply. Thank you for your time for those of you that traveled here today and thank you for both of your respective arguments as well. With my limited time, I'm just going to launch right into that. I actually had a completely different plan for this argument, but I noticed that the court is very focused on the lack of diversity in this matter. And I think I will respectfully disagree with you that there is a diversity issue here. Spenard Builder Supply is undeniably located in Alaska. The Fox are also undeniably. Could you speak up? Absolutely. I'm trying not to shout into the hot mic. I have a lot of speakers in my ears. Having said that, the defendant- Are you saying that Spenard is not an Alaska corporation? No, we are.  And the Fox are absolutely Alaska residents. But the Ninth Circuit has significant precedent on fraudulent joinder of a local party. And none of us have addressed that at all here. So even if I am local, and by the way, I hate the name for that legal regime. It makes it sound like I'm casting aspersions. So you want an opportunity, I mean, you want an opportunity before the district court, before we order it to be dismissed to raise the fraudulent joinder? Absolutely. That wasn't briefed below, and it has not been briefed here, because Royal Canyon came out-  We just sprung this on you. Exactly. And respectfully, I think we all saw Royal Canyon being argued in the district courts on its way up to the Supreme Court, but I didn't anticipate that that would be the outcome from that case. Having said that, fraudulent joinder in this matter is fairly clear. Well, okay. So I don't, I guess the question is what do we do with fraudulent joinder? Can we even, is there precedent for allowing you to raise that? I don't know the answer to that. Maybe if we're getting a 28J letter, we could get something on that. I mean, I just wonder, it doesn't seem to be the best position for you to argue that in the first instance before us. I'm wondering if we're going to remand it, if there's precedent for saying, hey, before you send it back to the state court, take a look at this. Precedent, no. This is a fairly unprecedented matter, because we are before the court on CAFA, and we're essentially asking, I would be asking the court, whether it's the district court or you, to reconsider whether in absence of a CAFA claim, whether actual diversity still exists. I thought, I mean, it's a very confusing issue, because my recollection of fraudulent joinder is it has to be brought within a certain amount of time. And so I'm wondering whether fraudulent joinder, I mean, fraudulent joinder does have to be brought within, I mean, the exception to that would be if it was discovered later, but I don't know how that would apply here. But I wonder whether the district court should just figure that out. That is likely a better question for the district court. I fundamentally feel uncomfortable bringing up something novel in front at this stage in the game, but it's with Royal Canyon, and it's something I'm obligated to do on behalf of my client. Having said that, fraudulent joinder is a fairly nasty term. I don't like the terminology for that regime, but it's two prongs. The first is actual fraud in the pleading. That is not what I'd be arguing here. The second prong is whether there is a cognizable claim against Spenard Builder Supply specifically, and based on the plaintiff's complaint, specifically paragraphs 3, 45, and 31, taken as a whole, they affirmatively allege that Spenard Builder Supply, quote, abandoned all warranty obligations in 2004. Now, I would take the position, as I do today, that there were no warranty obligations. An oral lifetime warranty made by a retail employee cannot bind a third-party manufacturer. That strikes me as difficult. Having said that, the plaintiffs have affirmatively alleged that we abandoned any obligation, even if they did exist, in 2004, and under Alaska state law, that's what statute of limitations which would apply here, the longest statute available to the plaintiffs, to the Falks here, would be 10 years. Under the unjust enrichment statute, that would have expired in 2014. The Falks didn't file suit for another eight years after that. There isn't a cognizable legal claim against Spenard Builder. The practical ramifications of this is, I believe, we were added simply to destroy diversity. Well, now you're getting into a motion to dismiss territory.  But anyway. To the extent that the court is concerned about whether there continues to be jurisdiction, there are multiple paths to federal jurisdiction here that just we haven't had a chance to brief yet. The worst-case scenario for my client is we go back to district court, rebrief the fraudulent rejoinder action, which I think is fairly clear, that there isn't a cognizable legal claim against Spenard Builder Supply. That would remove my client from this case, and then you would have standard-issue federal jurisdiction from diverse parties, which should be the outcome here. I understand the procedural ramifications that you may not be willing to make that finding. You are reviewing this de novo, though, so you can look at the allegations in the plaintiff's complaint, and you could find that there isn't a cognizable legal claim. What makes me a little uncomfortable with that – You're over. But I think the problem with the argument that I'm hearing now, and I'm hearing it for the first time, is you're mixing up fraudulent rejoinder with cognizable legal claim, and those are two separate issues. But we'll take a closer look at it. Right. Actually, I can just give you the case site right here. It's Grand Care LLC v. Thrower, 889 F. 3rd, 543. The pen site is 548, 9th Circuit, 2018. Like I told your fellow counsel, if you could put that on 28J. Absolutely. That would be great. Okay. Well, look. You have definitely preserved the issue. You've made it clear. Thank you very much for your time. That was your goal today, and I think you've accomplished that. Thank you. I would like to address the Nichols v. 300 M Street case that Geldwin's counsel brought up. In that case, it is similar posture to this case, but again, that was a district court case, and it was twisted logic. So in that sense, the plaintiffs did remove the class allegations, and the court looked at that, feeling still bound by Seventh Circuit law, similar to how we have in the Ninth Circuit. Seventh Circuit law? I believe ... This was D.C. Maybe it was D.C. Oh, okay. I'm sorry. I don't have the case in front of me. Was there diversity jurisdiction in the D.C. case? I don't believe there was complete diversity. Okay. And so to get ... And it was analogous to here. It is analogous to here, but it's twisted logic in the sense that the court looked at the plaintiffs removing the class actions and said, well, what they're really doing is just reducing the amount of controversy. But that doesn't make sense, and it's contrary to the text of the statute. Because 28 U.S.C. 1332 D-5 is a separate subsection of CAFA jurisdiction, which states that it does not apply when there are less than 100 plaintiffs. That is separate from the amount in controversy. So you can't combine the two and say, oh, they're really the same thing. It's a completely different subsection that states there is no CAFA jurisdiction if there's less than 100 plaintiffs. And interestingly, while Royal Canin at the Supreme Court level was looking at federal question jurisdiction, it was originally a class action case filed in state court. It was then removed to the federal district court on the basis of federal question and CAFA jurisdiction. And the plaintiffs, when they amended their complaint, got around CAFA jurisdiction's minimal diversity requirement by removing the diverse defendants and naming them as non-party co-conspirators. And that was allowed by the court, and that went up to the Supreme Court, and they didn't even address that issue. So CAFA was before the Supreme Court in this case. And in the oral arguments for Royal Canin, Justice Barrett asked a very specific question to counsel how this would affect CAFA cases. And the answer was that it wouldn't. Because the minimal diversity requirement will ensure that the types of cases that Congress was concerned about, which are nationwide class actions, are always going to have minimal diversity. So the separate requirement of having at least 100 plaintiffs is a very important requirement that was part of what Congress intended. And I take your argument, but all this is to say, your argument is the district court in D.C. got it wrong. Yes. That is our argument. And going back to that Senate report, that was exclusively focused on nationwide class actions. That was the whole reason behind enacting CAFA. The word nationwide appears 49 times in that Senate report. And that Senate report is what both Banco and Broadway Grill reference when they talk about foreign manipulation. And that there are many examples in that Senate report, one of which is a retailer, a local retailer that had been named in hundreds of lawsuits because naming her destroyed diversity for the purposes of nationwide class actions. And she was located in a district where that specific state court was known for certifying class actions almost across the board. Another example was a state farm case where they had used non-original manufactured parts to make replacements in their insurance repairs. And the plaintiffs filed a nationwide class action alleging that those parts were inferior. They filed it in a state court in Madison County, Illinois, that's known for approving class actions. And there are many states that have regulations, insurance regulations that state that it's perfectly allowable to use non-originally manufactured parts. And in fact, there were two states that mandate that insurers use non-original manufactured parts. And so you have a state court in Illinois making a decision that is contrary or conflicts with regulations and state's statutes all across the nation. Those are the types. Do you have any response to the so-called fraudulent joinder point? Your Honor, that was never raised before the district court. There were two rounds of briefing on subject matter jurisdiction in this case, and not once did Spenard raise that issue. Well, but they wouldn't have had, hold on, oh, I, well, but they raised a motion to dismiss, but they never, but fraudulent joinder, they would have raised on a remand and it would never would have, there wouldn't have been a reason to do it because it was CAFA. You moved to remand though, right? We moved twice to remand. And this argument was not raised? Correct. But it wouldn't have, there wouldn't have been a reason to raise it because the remand all focused on CAFA at the time, right? The defendants chose to focus on CAFA. They could have also raised. No, they couldn't have, because if there was federal jurisdiction, they opposed your remand, but they said there's CAFA jurisdiction. Well, I'll have to look at it. Correct. They did say- I mean, you're sort of hinting at a waiver argument, I guess. Yeah. I'm stating a waiver argument.  All right. Well, look, your time's about up, but if I would, you were also free to file a 28-J letter in response. So, you know, maybe the best course, this is almost like supplemental briefing, but if they're going to file a 28-J on the Judge McFadden opinion, you are welcome to file a response of 28-J as well. Okay. I think that would help the court. And look, we appreciate this case kind of, Supreme Court does this sometimes, and we all got to kind of reset where we are, and this is one of those situations. Thank you very much. Thank you, Kemp. Thank you both for this interesting civil procedure. All three. All three. This is the- More than both. For our extern in the courtroom, if you take Advancive Pro, you got a head start right now. All right. Then we'll call the final case for today, Samson Tugg.
judges: GRABER, OWENS, NELSON